176 F.3d 768
 FRIENDS OF IWO JIMA; Gerald B.H. Solomon, Plaintiffs-Appellants,
v.
NATIONAL CAPITAL PLANNING COMMISSION; U.S. Commission of
Fine Arts; U.S. Department of the Interior;
National Park Service; Air Force
Memorial Foundation,
Defendants-Appellees.
 No. 98-2109.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1999.
Decided May 7, 1999.
 
 ARGUED: Thomas Matthew Buchanan, Winston & Strawn, Washington, D.C., for Appellants. Jeri Kaylene Somers, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia; Mitchell R. Berger, Patton Boggs, L.L.P., Washington, D.C., for Appellees. ON BRIEF: Michael T. Dyson, WINSTON & STRAWN, Washington, D.C., for Appellants. Helen F. Fahey, United States Attorney, Office of the United States Attorney, Alexandria, Virginia; Benjamin L. Ginsberg, Benjamin G. Chew, Patton Boggs, L.L.P., Washington, D.C.; Josefa E. O'Malley, Office of the Solicitor, Division of Conservation and Wildlife, United States Department of the Interior, Washington, D.C.; Sandra H. Shapiro, General, National Capital Planning Commission, Washington, D.C., for Appellees.
 Before WILKINSON, Chief Judge, BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.
 Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge BROADWATER and Judge MICHAEL joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 This case involves the complex and often contentious process of creating and siting a new memorial in our nation's capital. Specifically, it concerns an attempt to site a memorial to the United States Air Force at Arlington Ridge in Arlington, Virginia. The proposed Air Force Memorial will stand between the United States Marine Corps War Memorial, popularly known as the Iwo Jima Memorial, and the Netherlands Carillon, which was given to this country for its aid to the Dutch people during World War II. After siting was approved, Friends of Iwo Jima and Congressman Gerald B.H. Solomon, a former Marine, brought suit alleging several substantive and procedural defects in the siting process. The district court granted summary judgment to defendants on all claims. We affirm.
 
 I.
 
 2
 To site a memorial in the Washington D.C. metropolitan area on land administered by the National Park Service, an interested group must complete the lengthy approval process mandated by the Commemorative Works Act. 40 U.S.C. §§ 1001(d), 1003(a). First, Congress must authorize the memorial and designate the group as the memorial's sponsor. Id. §§ 1002(d), 1003(a). The group must then consult with the National Capital Memorial Commission (NCMC) regarding site and design alternatives. Id. § 1007(a)(1). Once this consultation is complete, the Secretary of the Interior submits, on behalf of the group, the site and design proposals to the Commission of Fine Arts (CFA) and the National Capital Planning Commission (Planning Commission) for their approval. Id. § 1007(a)(2).
 
 
 3
 When the Secretary determines that the requisite approvals are complete, that the memorial will be structurally sound, and that the group has the wherewithal to finish the project, the group may apply for a construction permit. Id. § 1008(a). If it fails to obtain the construction permit within seven years from the date of the memorial's congressional authorization, that authorization expires. Id. § 1010(b).
 
 
 4
 In November 1993 the Air Force Memorial Foundation took the first step in the approval process when Congress designated it to sponsor the Air Force Memorial. On December 2, 1993 the President signed this designation into law. Pub.L. No. 103-163, 107 Stat. 1973 (1993).
 
 
 5
 On March 24, 1994 the NCMC held a hearing to discuss possible sites for the Air Force Memorial. Of eighteen proposed sites, the Foundation indicated that it preferred the site at Arlington Ridge. In support of that location, the Foundation pointed to the many elements of military significance located nearby, including Arlington Cemetery, the Iwo Jima Memorial, and the location of the first military airplane flight. The Foundation also noted that the site's elevation was consistent with the Air Force's aerial nature and would therefore enhance the Memorial's appeal. Several members of the NCMC expressed concern that siting the Air Force Memorial at Arlington Ridge would crowd the Iwo Jima Memorial and the Netherlands Carillon. In response, the Foundation agreed not to disturb the existing memorials. The NCMC then unanimously voted to recommend Arlington Ridge as the site and submitted its recommendation to the Park Service for presentation to the CFA and the Planning Commission.
 
 
 6
 On July 27, 1994 the CFA considered the eighteen sites proposed for the Memorial as well as the NCMC's recommendation of Arlington Ridge. Recognizing the sensitive nature of Arlington Ridge, the CFA tabled the decision until its members could visit the site. On September 14, 1994 the CFA again took up the siting of the Air Force Memorial. After several members stressed the need to accommodate the Iwo Jima Memorial and the Netherlands Carillon, the CFA unanimously approved Arlington Ridge.
 
 
 7
 Meanwhile, the Planning Commission began its debate on the placement of the Air Force Memorial. Pursuant to standard practice, the Planning Commission's Executive Director completed an Executive Director's Recommendation. The Recommendation included the Planning Commission staff's analysis of several sites and recommended Arlington Ridge on the condition that the Memorial not impinge on the surrounding memorials. When the Planning Commission met on July 28, 1994, it was concerned that too little space was available at Arlington Ridge. Consequently, it tabled the matter until the Foundation provided more information on both Arlington Ridge and six other sites.
 
 
 8
 The Planning Commission reconvened on October 6, 1994 to discuss the Air Force Memorial. A new Executive Director's Recommendation prepared for this meeting recommended that the Planning Commission approve Arlington Ridge conditioned on the submission of a design concept that would prevent the crowding of the adjacent memorials. Despite this recommendation, the Commissioners engaged in a heated debate about the propriety of the Arlington Ridge site. Several members expressed concerns that the proposed Memorial would intrude upon the adjacent memorials and consume the area's remaining open space. The Planning Commission then voted seven to four to disapprove Arlington Ridge. It instructed the Foundation to utilize the Planning Commission staff in locating and evaluating other sites for the Air Force Memorial.
 
 
 9
 With the assistance of the Planning Commission staff, the Foundation examined twelve additional sites. The Foundation also created general design parameters for an Air Force Memorial at Arlington Ridge in an attempt to demonstrate the Memorial's compatibility with the Iwo Jima Memorial, the Netherlands Carillon, and the maintenance of open space.
 
 
 10
 After what plaintiffs claim was heavy-handed lobbying behind the scenes in favor of reopening the debate on Arlington Ridge, the Foundation returned to the Planning Commission on April 6, 1995. Once the Foundation finished presenting its findings as to the twelve new sites, a Commissioner moved to reconsider the rejection of Arlington Ridge. The Planning Commission asked its staff to make a presentation concerning the twelve new sites as well as Arlington Ridge at the Planning Commission's next meeting.
 
 
 11
 On May 4, 1995 the Planning Commission met and accepted the staff's report, which included the Foundation's design parameters. On a renewed motion to reconsider, the Planning Commission unanimously approved Arlington Ridge as the site for an Air Force Memorial consistent with those parameters.
 
 
 12
 In February and March 1996 the CFA and the Planning Commission approved the design concept for the Air Force Memorial. The design concept calls for a 6,000 to 6,500 square foot monument above grade that will stand 634 feet from the Iwo Jima Memorial and 340 feet from the Netherlands Carillon. The design concept also provides for a 20,000 to 30,000 square foot visitors' center below grade. The visitors' center will include interactive displays on the Air Force as well as a room in which visitors may reflect on what they have just seen. Currently, the Foundation continues to work its way through the design approval process.
 
 
 13
 On September 16, 1997 Friends of Iwo Jima brought suit in the United States District Court for the Eastern District of Virginia against the Park Service, the CFA, and the Planning Commission.[1] The complaint alleged that defendants' siting decision contravened the Commemorative Works Act, 40 U.S.C. § 1001 et seq., and that the siting process was infected with procedural error. Friends of Iwo Jima sought a temporary restraining order and a preliminary injunction, as well as declaratory and permanent injunctive relief. The district court denied the request for the temporary restraining order and the preliminary injunction. The parties then filed cross motions for summary judgment, and the district court granted defendants' motion. Because we believe that defendants complied with the Commemorative Works Act and that any procedural errors were harmless, we affirm the judgment of the district court.
 
 II.
 
 14
 Friends of Iwo Jima alleges that in siting the Air Force Memorial at Arlington Ridge, defendants violated the Commemorative Works Act. 40 U.S.C. § 1001 et seq. Plaintiffs first claim that the Air Force Memorial is not a commemorative work, and therefore the defendants lacked authority to site the Memorial on federal land.[2] The Act defines a commemorative work as
 
 
 15
 any statue, monument, sculpture, memorial, plaque, inscription, or other structure or landscape feature, including a garden or memorial grove, designed to perpetuate in a permanent manner the memory of an individual, group, event or other significant element of American history. The term does not include any such item which is located within the interior of a structure or a structure which is primarily used for other purposes.
 
 
 16
 Id. § 1002(c). The statutory definition is a flexible one and anticipates that memorials in our nation's capital will exhibit some variety in appearance. Friends of Iwo Jima, however, advances two arguments why the Memorial does not meet this definition. Initially, it argues that the Air Force Memorial is not a commemorative work because it includes a visitors' center within its interior. However, the Act does not exclude from the definition of commemorative work memorials that include interior space. Indeed, many Washington monuments include such space. The Act only excludes statues, monuments, and the like that are within another structure. The Air Force Memorial is obviously not within the interior of any other structure. In fact, the Memorial is a classic example of a monument designed to perpetuate the memory of airmen who played a significant part in American military history. As such, it is clearly covered by the Act.
 
 
 17
 Nonetheless, Friends of Iwo Jima complains that the Memorial is not a commemorative work because it will be "primarily used for" purposes other than commemoration. Id. Specifically, Friends of Iwo Jima finds it objectionable that the visitors' center will contain interactive displays on the past, present, and future of the Air Force and may be used for recognitions, retirements, reenlistments, and promotions. Interactive displays on past deeds and sacrifices by the Air Force, however, are commemorative. Special recognitions, retirements, reenlistments, and promotions can likewise be in keeping with a ceremonial or commemorative theme. And even if talk of the future might not be strictly commemorative, Friends of Iwo Jima provides no evidence that this claimed noncommemorative use will be the primary one.
 
 
 18
 Additionally, Friends of Iwo Jima claims that the Planning Commission failed to consider whether the Air Force Memorial would interfere with the Iwo Jima Memorial and the Netherlands Carillon, and whether the Foundation's plan would protect the open space currently available at Arlington Ridge. When siting a commemorative work, the Planning Commission is to be "guided by (but not limited by)" certain criteria. Id. § 1007(b). In particular, the Commission is to "prevent interference with, or encroachment upon, any existing commemorative work and to protect, to the maximum extent practicable, open space and existing public use." Id. § 1007(b)(2).
 
 
 19
 Friends of Iwo Jima's claim, however, simply finds no support in the record. As noted, the Planning Commission at its meetings of July 28, 1994 and October 6, 1994 vigorously debated the effect of the proposed Air Force Memorial both on the other memorials at Arlington Ridge and on the area's open space. More importantly, it was largely the design parameters--which the Foundation created specifically to address these concerns, and which the Planning Commission staff included in its analysis to the Commissioners--that induced the Planning Commission to reconsider and ultimately reverse its earlier rejection of Arlington Ridge.
 
 III.
 
 20
 In addition to the foregoing claims under the Commemorative Works Act, Friends of Iwo Jima alleges several procedural errors in the siting process.
 
 A.
 
 21
 Friends of Iwo Jima argues that defendants provided inadequate public notice at several steps in the approval process. Specifically, Friends of Iwo Jima maintains that no notice was given for the Park Service's approval of Arlington Ridge and the CFA's meeting on September 14, 1994 in violation of 36 C.F.R. § 1.5(b) and 45 C.F.R. § 2102.3, respectively. Moreover, the group claims that notice was inadequate for the NCMC's meeting on March 24, 1994 and for the Planning Commission's May 4, 1995 meeting in violation of the Federal Advisory Committee Act, 5 U.S.C. app. 2 § 10(a)(2), and the Planning Commission's internal rules, respectively. Consequently, plaintiffs claim that defendants failed to employ the necessary procedures in their decisionmaking, and their approvals of Arlington Ridge must therefore be vacated.
 
 
 22
 To begin with, the district court expressed skepticism that interested parties would be unaware of such an emotionally laden controversy. That skepticism was particularly understandable given that adequate notice was frequently provided throughout the protracted process of siting the Air Force Memorial at Arlington Ridge. The CFA began its deliberations by publishing notice of its July 27, 1994 meeting in the Federal Register. Similarly, the Planning Commission mailed its list of tentative agenda items to over 1100 persons and organizations for every one of its four meetings. The tentative agendas for the Planning Commission's July 28, 1994 and October 6, 1994 meetings informed the recipients that the Planning Commission would consider the "Air Force Memorial, in the vicinity of the U.S. Marine Corps (Iwo Jima) Memorial, Arlington, Virginia."[3]
 
 
 23
 Friends of Iwo Jima has plucked four meetings out of the protracted process and challenged the notice for each. It appears correct that no notice was given for the Park Service's approval and for the CFA's September 14, 1994 meeting. But the adequacy of the notice for the other two is a much closer question. First, Friends of Iwo Jima attacks the NCMC's notice of its March 24, 1994 meeting as being untimely because it was published in the Federal Register on the day of the meeting. NCMC, however, took measures to cure this deficiency. Specifically, the NCMC provided for a four-week period during which the public could comment on the NCMC's decision. Consequently, although it appears the notice was untimely in the technical sense, the purpose of providing notice--soliciting comments and fostering debate--was served.
 
 
 24
 The same is true of the Planning Commission's notice of its May 4, 1995 meeting. Friends of Iwo Jima argues that the notice was deficient because it did not state specifically that the Planning Commission planned to reconsider its October 6, 1994 rejection of Arlington Ridge. Rather, the notice said that the Planning Commission would consider the "Air Force Memorial--Review of Alternative Locations in the District of Columbia and its Environs ... possible Commission action on location pursuant to Commemorative Works Act." Although Friends of Iwo Jima claims this notice was misleading, "Alternative Locations" is certainly broad enough to refer to each possible location, including Arlington Ridge.
 
 
 25
 Moreover, the party who claims deficient notice bears the burden of proving that any such deficiency was prejudicial. See Air Canada v. Dep't of Transp., 148 F.3d 1142, 1156 (D.C.Cir.1998) ("As incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error."); 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). If a party fails to carry that burden, the agency's decision must be upheld. Sierra Club v. Slater, 120 F.3d 623, 637 (6th Cir.1997) (faulty notice "that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination"); Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir.1995) ("Failure to provide notice and comment is harmless when the agency's mistake had no bearing on the procedure used or the substance of the decision."). Friends of Iwo Jima makes no showing that the outcome of the process would have differed in the slightest had notice been at its meticulous best. At each meeting the discussion centered on the identical substantive claims Friends of Iwo Jima makes here--the effect of the Air Force Memorial on the adjacent memorials and on open space. Indeed, at one point the Planning Commission rejected Arlington Ridge as a site precisely because of these concerns. And it was not until the Foundation created design parameters to account for the concerns that the Planning Commission reconsidered its rejection. In short, the position of Friends of Iwo Jima was the main focus of each stage in the approval process. Its position was considered and simply did not prevail.
 
 
 26
 Notably, Friends of Iwo Jima never even became involved in the siting process despite the numerous instances of adequate notice. Plaintiffs attended none of the meetings and submitted no comments. The first time Friends of Iwo Jima took any affirmative step with respect to the Memorial was when it filed a lawsuit on September 16, 1997.
 
 B.
 
 27
 Finally, Friends of Iwo Jima claims that the Planning Commission failed to follow its own internal procedures--which include Robert's Rules of Order--when it reconsidered its rejection of Arlington Ridge. See IMS, P.C. v. Alvarez, 129 F.3d 618, 621 (D.C.Cir.1997) (failure to follow own regulations can be fatal to agency action). Reviewing courts give great deference, however, to an agency's interpretation of its own rules and regulations. See Dorsey v. Housing Auth., 984 F.2d 622, 632 (4th Cir.1993). Courts were not conceived by the Administrative Procedure Act as "Grand Parliamentarian[s]." Rothstein v. Manuti, 235 F.Supp. 48, 50 (S.D.N.Y.1964). Rather, we ask only whether the Planning Commission's interpretation of its rules was arbitrary or capricious. 5 U.S.C. § 706(2)(A).
 
 
 28
 First, Friends of Iwo Jima and the Planning Commission dispute whether the Commission is a board or a standing committee. The distinction is an important one. If the Commission is a board, it cannot reconsider a vote beyond the day the vote was taken. Robert's Rules of Order § 36, at 310 (Henry M. Robert III & William J. Evans eds., 1990). Consequently, the Commission would have violated its internal rules by reconsidering its October 6, 1994 decision to reject Arlington Ridge on May 4, 1995. If the Commission is a standing committee, however, it may reconsider a vote at any time. Id. § 36, at 323.
 
 
 29
 We cannot say that the Planning Commission's decision to follow standing committee rules was arbitrary and capricious. Robert's Rules defines a standing committee as a "relatively small number of persons appointed to give a task more detailed attention than is possible in a body the size of the assembly." Id. § 49, at 479. Congress certainly seemed to have this concept in mind when it created the Planning Commission to pass on development in our nation's capital. 40 U.S.C. § 71a(a)(1) ("The National Capital Planning Commission ... is created as the central Federal planning agency for the Federal Government in the National Capital...."). Moreover, Robert's Rules itself recognizes that the distinction between a committee and a board is not always clear. Robert's Rules § 49, at 480 ("Some standing committees, however--particularly in large state or national organizations--function virtually in the manner of boards, although not designated as such."). In these circumstances, the Planning Commission's course of action was neither arbitrary nor capricious.[4]
 
 
 30
 Second, Friends of Iwo Jima maintains that the Planning Commission violated its Standing Rule Three which provides that "No business shall be transacted out of its order nor any items added except by suspension of the rules in accordance with Robert's Rules of Order." Arguing again that the list of agenda items for the May 4, 1995 meeting did not indicate that the Planning Commission intended to reconsider its decision as to Arlington Ridge, Friends of Iwo Jima claims that the reconsideration was added to the agenda in violation of Standing Rule Three. We disagree. The list of agenda items specifically stated that the Commission planned to consider alternative sites for the Air Force Memorial. And to the extent that Friends of Iwo Jima is complaining that the list of agenda items was unclear, this argument is nothing more than a reiteration of its rejected notice argument.
 
 IV.
 
 31
 At heart, this case concerns memorials for two esteemed branches of military service. Each branch has made momentous sacrifices for our country, and those who have served understandably wish to see those sacrifices suitably memorialized. Those who oppose placing the Air Force Memorial at Arlington Ridge claim that it not only would "detract from the historic bearing" of the Iwo Jima Memorial and the Netherlands Carillon, "but would disturb the peacefulness of the Arlington Ridge environment where these cherished national icons were sited long ago." Those who support Arlington Ridge as the site stress its proximity to significant elements of military and aeronautical history as well as the unique consistency of the site's elevation with a memorial to the Air Force.
 
 
 32
 It is not clear to us what the best site for the Air Force Memorial would be. It is clear, however, that this decision has been exhaustively debated by the agencies and commissions charged by Congress with this task. Notwithstanding plaintiffs' protestations, the Act clearly applies to the siting process at issue here, and any procedural errors are, when viewed against the backdrop of this extended process, plainly harmless.
 
 
 33
 In the Commemorative Works Act, Congress envisioned a process of multiple reviews and approvals. 40 U.S.C. § 1001 et seq. The process unfolded as Congress had intended. Were we now to vacate the approvals for the Air Force Memorial, we likely would prevent it from being built. In the face of the expiration of Congress' authorization, we would place the Foundation back at step one. In effect, this court would be arrogating to itself the decision whether or not the Air Force Memorial should find a place at Arlington Ridge. On the basis of nothing more than harmless procedural errors, this we are unwilling to do. The judgment of the district court is hereby
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Friends of Iwo Jima also named the Foundation as a defendant. The district court dismissed the Foundation, and Friends of Iwo Jima does not appeal that dismissal
 
 
 [2]
 Defendants argue that until a final memorial design has been approved, plaintiffs' contentions are unripe for review. We agree, however, with the district court that a ripe controversy exists when the design concept has been approved
 
 
 [3]
 The list of agenda items for the Planning Commission's meeting on April 6, 1995 did not include a specific reference to the Air Force Memorial because as a matter of practice such lists do not include non-action items. Indeed, the Planning Commission did not vote to reconsider its October 6, 1994 rejection of Arlington Ridge at its April 6, 1995 meeting precisely because the siting discussion was a non-action item
 
 
 [4]
 Friends of Iwo Jima also argues that even if the Planning Commission is analogous to a standing committee and was therefore free to reconsider its decision at a later date, the reconsideration was improper because it did not occur within a reasonable time. Dun & Bradstreet Corp. Found. v. United States Postal Serv., 946 F.2d 189, 193 (2d Cir.1991). The seven month period between the October 6, 1994 rejection and the May 4, 1995 reconsideration was reasonable, however. During that time the Foundation followed the Planning Commission's instructions to locate and analyze additional sites. The Foundation also created design parameters for the Memorial. The delay to allow pursuit of these projects was certainly not unreasonable